IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KIMBERLY P., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 3:22-cv-02436-K-BT |
| | § | |
| KILOLO KIJAKAZI, ACTING | § | |
| COMMISSIONER OF SOCIAL | § | |
| SECURITY, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court is Plaintiff Kimberly P.'s[1] civil action seeking judicial review pursuant to 42 U.S.C. § 405(g) of a final adverse decision by the Commissioner of Social Security (ECF No. 1). The District Court referred the case to the United States Magistrate Judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference. For the reasons explained below, the Magistrate Judge recommends that the District Court REVERSE the Commissioner's decision and REMAND the case to the Commissioner.

## Background

Plaintiff alleges that she is disabled due to brain degeneration that causes migraines, a bulging disc in the lower back with arthritis, and chronic migraines.

---

[1] The Court uses only Plaintiff's first name and last initial as instructed by the May 1, 2018, Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions issued by the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

Admin. R. 55, 230 (ECF No. 12-1).[2] Plaintiff was born in 1980, and she alleges that she has been disabled since January 7, 2018. Admin. R. 216. Plaintiff has a high school education. Admin. R. 221, 231. She has past relevant work experience as an animal attendant. Admin. R. 50.

Plaintiff applied for disability insurance benefits on October 29, 2019. Admin. R. 16. Her claim was denied initially and on reconsideration. Admin. R. 63, 80. Thereafter, Plaintiff requested a hearing before an Administrative Law Judge (ALJ), who conducted a telephonic administrative hearing on September 14, 2021.[3] Admin. R. 30-53.

The ALJ found Plaintiff was not disabled from January 7, 2018, her alleged onset date, through March 31, 2020, her date last insured, and thus not entitled to disability benefits. Admin. R. 24-25. Utilizing the five-step sequential evaluation,[4]

---

[2] Citations to the record refer to the CM/ECF page number at the top of each page rather than page numbers at the bottom of each filing.

[3] Because of the extraordinary circumstances presented by the COVID-19 pandemic, the ALJ was unable to conduct the hearing by video. Admin. R. 12.

[4] "In evaluating a disability claim, the [ALJ] conducts a five-step sequential analysis to determine whether (1) the [plaintiff] is presently working; (2) the [plaintiff] has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the [plaintiff] from doing past relevant work; and (5) the impairment prevents the [plaintiff] from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007). The plaintiff bears the initial burden of establishing a disability through the first four steps of the analysis; at the fifth step, the burden shifts to the ALJ to show that there is other substantial work in the national economy that the plaintiff can perform. *Id.* at 448; *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (citations omitted). A finding that the plaintiff is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Copeland*, 771 F.3d at 923 (citing *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995)); *Lovelace v. Bowen*, 813 F.2d

the ALJ first found that Plaintiff's earnings in 2018 exceeded substantial gainful activity but that she had not engaged in substantial gainful activity since the end of 2018 through March 31, 2020. Admin. R. 18-19. At the second step, the ALJ found that Plaintiff suffered from the severe physical impairment of "degenerative disc disease," and the non-severe impairments of headaches and obesity. Admin. R. 19. At the third step, the ALJ determined that, through her date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any listed impairment in appendix 1 of the social security regulations. Admin. R. 19-20.

Before proceeding to the fourth step, the ALJ found that Plaintiff retained the residual functional capacity (RFC) to

> perform light work as defined in 20 CFR 404.1567(b), except this individual is able to frequently balance on flat surface. She is able to occasionally stoop, kneel, crouch, crawl and climb stairs and ramps. She cannot climb ladders, ropes, or scaffolds. She must avoid unprotected heights and unprotected moving mechanical parts.

Admin. R. 20.

Relying on the hearing testimony of a vocational expert (VE), at step four, the ALJ found that Plaintiff could not perform her past relevant work as an animal attendant. Admin. R. 23. At step five, the ALJ found, based on the VE's hearing testimony, that Plaintiff was capable of performing the jobs of mail sorter, garment sorter, and office helper, and that these jobs existed in significant numbers in the

---

55, 58 (5th Cir. 1987) (citing *Barajas v. Heckler*, 738 F.2d 641, 643 (5th Cir. 1984) (per curiam)).

national economy. Admin. R. 24. Therefore, the ALJ found that Plaintiff had not been under a disability, as defined by the Social Security Act, and was not entitled to benefits. Admin. R. 25.

Plaintiff appealed the ALJ's decision to the Appeals Council. Admin. R. 8. The Appeals Council found that the appeal did not provide a basis for modifying the ALJ's decision. Admin. R. 5-7. Plaintiff then filed this action in federal district court.

## Legal Standard

The Court's "review of Social Security disability cases 'is limited to two inquiries: (1) whether the decision is supported by substantial evidence on the record as a whole, and (2) whether the [ALJ] applied the proper legal standard.'" *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (quoting *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005)). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see Copeland*, 771 F.3d at 923 ("Substantial evidence is more than a mere scintilla and less than a preponderance.").

The ALJ, and not the courts, resolves conflicts in the evidence; the Court may not "reweigh the evidence or try the issues de novo." *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995) (per curiam). Hence, the Court may not substitute its own judgment for the ALJ's, and it may affirm only on the grounds that the Commissioner stated to support her decision. *Copeland*, 771 F.3d at 923. If the

Commissioner's findings are supported by substantial evidence, the findings are conclusive, and the Commissioner's decision must be affirmed. *Martinez*, 64 F.3d at 173. A reviewing court must defer to the ALJ's decision when substantial evidence supports it, even if the court would reach a different conclusion based on the evidence in the record. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

Nevertheless, the substantial evidence review is not an uncritical "rubber stamp" and requires "more than a search for evidence supporting the [ALJ's] findings." *Hill v. Saul*, 2020 WL 6370168, at *6 (N.D. Tex. Sept. 29, 2020) (quoting *Martin v. Heckler*, 748 F.2d 1027, 1031 (5th Cir. 1984)), *adopted by* 2020 WL 6363878 (N.D. Tex. Oct. 29, 2020) (Lindsay, J.). The Court "must scrutinize the record and take into account whatever fairly detracts from the substantiality of the evidence supporting" the ALJ's decision. *Id.* (quoting *Martin*, 748 F.2d at 1031). A no-substantial-evidence finding is appropriate only if there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *Id.* (citation omitted).

## Analysis

Among the arguments Plaintiff makes is a single ground that requires remand. Specifically, Plaintiff contends that the ALJ erred at step two in failing to address her brain atrophy and traumatic brain injury (TBI) or consider whether they were medically determinable impairments. Pl.'s Br. 13 (ECF No. 17). In response, the Commissioner frames Plaintiff's argument as whether the ALJ "should have found that her severe impairments included . . . brain atrophy

(specifically cerebellar degeneration thought to be related to her childhood TBI and connected to speech, gait, and balance deficits.)" Def.'s Resp. Br. 5 (ECF No. 20). The Commissioner goes on to argue that the "ALJ applied the correct standard for determining Plaintiff's severe impairments[,]" and that the ALJ "also explained that she considered all of Plaintiff's impairments, including those not found to be severe, when determining Plaintiff's RFC." *Id.* at 7.

The Commissioner's argument is misplaced. The issue here is not whether the ALJ erred in determining the "severity" of Plaintiff's brain atrophy and TBI at step two, but whether the ALJ erred in failing to acknowledge or discuss these impairments anywhere in her decision, let alone consider whether they were medically determinable impairments.

At step two, an ALJ considers whether the claimant suffers from any severe medically determinable physical or mental impairments. *See* 20 C.F.R. §§ 404.1508, 404.1520(c). The ALJ is required to consider impairments a claimant alleges or those "about which [the ALJ] receive[s] evidence." 20 C.F.R § 404.1512(a)(1). The question of the existence of a medically determinable impairment is distinct from, and logically antecedent to, the question of its severity. *Randall v. Astrue*, 570 F.3d 651, 657-59 (5th Cir. 2009); *see id.* at 657-58 (examining the Act and pertinent regulations and reasoning that both "make it plain that the two inquiries are distinct"). To qualify as a medically determinable impairment, an impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical or

laboratory diagnostic techniques. Therefore, a physical or mental impairment must be established by objective medical evidence from an acceptable medical source." 20 C.F.R. §§ 404.1521, 416.921; §§ 404.1529, 416.929. If a medically determinable impairment or combination of impairments is found to exist, the regulations provide that it is severe if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c).

Here, the ALJ's step two analysis was brief. As previously noted, the ALJ found that Plaintiff's degenerative disc disease was a severe medically determinable impairment which significantly limited Plaintiff's ability to perform basic work activities, and that she suffered from the non-severe impairments of headaches and obesity. Admin. R. 19. The ALJ did not provide any explanation or justification for the omission of other medical conditions, including Plaintiff's brain atrophy and TBI, from the limited discussion. *See id*. Furthermore, in the ALJ's analysis of Plaintiff's medical treatment history, there is no reference to Plaintiff's brain atrophy or TBI. Admin. R. 19-23.

The ALJ's failure to consider Plaintiff's brain atrophy and TBI and to assess whether they were medically determinable impairments at step two is at odds with the record. Plaintiff claimed disability based, in part, on "brain degeneration" in her application for benefits. Admin R. 230. Her brain atrophy, as well as a 2017 MRI reflecting brain degeneration, were referenced by Plaintiff's counsel at the administrative hearing. Admin. R. 36. At the reconsideration level, the state agency medical consultant included Plaintiff's TBI in the list of medically determinable

impairments (although he ultimately found it "non-severe"). Admin. R. 71. The record includes an August 2017 diagnostic MRI showing "advanced atrophy of the bilateral cerebellar hemispheres" and likely "hypertrophic olivary degeneration." Admin. R. 415. The record also includes Dr. Charles Tuen's treatment notes during the alleged period of disability. Admin. R. 284-88. He states: "Old head injury at 3 years old, mild dysarthric and mild clumsiness, very mild unsteady gait"; "MRI head Aug. 2017 showed bilateral, cerebellar degeneration. Also possible idiopathic cerebellar degeneration." Admin. R. 284.

The evidence cited above is inconsistent with the ALJ's omission of any discussion of whether Plaintiff's brain atrophy and TBI rose to the level of medically determinable impairments. The ALJ failed to include any explanation for why she did not include any discussion at step two, despite the evidence of record.

Moreover, the ALJ's error was not harmless. *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (citing *Morris v. Bowen*, 864 F.2d 333, 334 (5th Cir. 1988)). Generally, "'[p]rocedural perfection in administrative proceedings is not required'" as long as "'the substantial rights of a party have not been affected.'" *Id.* (citing *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988)). But in this case the error was not harmless because the ALJ was required to consider all medically determinable impairments, determine their severity, and evaluate their impact at each step of the disability analysis. *See* 20 C.F.R. §§ 404.1545(a)(2)(3), 416.945(a)(2)-(3); *Cherelyn F. v. Saul*, 2022 WL 524226, at *4 (N.D. Tex. Feb. 22, 2022) (Horan, J.)

("The Commissioner unquestionably must consider all potential impairments") (citation omitted); *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000).

And, even if the ALJ would have found Plaintiff's brain atrophy and TBI to be non-severe at step two, the ALJ would nonetheless have been required to proceed to step three considering whether these non-severe impairments combined with her severe impairments to meet or medically equal a listing; and to step four, taking into account the impact of these impairments on her RFC. *See id.* (The ALJ is "required to consider the combined effects of all impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity").

Because it is not inconceivable that the ALJ would have reached a different determination absent her step two error, the error was not harmless. *See, e.g.*, *Sullivan v. Colvin*, 2014 WL 1320098, at *13-14 (N.D. Tex. Mar. 31, 2014) (Ramirez, J.) (finding ALJ's step two error, omitting without explanation any mention of Plaintiff's medically documented COPD, was not harmless, as it was unclear whether he considered the effects that the alleged impairment might have on her ability to work at step five); *Tipler v. Berryhill*, 2019 WL 2233627, at *15 (N.D. Tex. May 3, 2019) (Ramirez, J.), *adopted by* 2019 WL 2234707 (N.D. Tex. May 23, 2019) (finding ALJ's step two error, failing without explanation to discuss claimant's cervical radiculopathy, was not harmless, because the ALJ did not reference evidence of this impairment in assessing the claimant's RFC, and it is unclear whether he accounted for the effects of cervical radiculopathy on

claimant's ability to perform work-related functions at step five); *see also John B. v. Kijakazi*, 2022 WL 813829, at *5 (N.D.N.Y. Mar. 16, 2022) (finding ALJ's step two error, omitting any consideration of claimant's chronic kidney disease, was not harmless, as the error impacted the subsequent steps of the disability determination process); *Fontanez v. Colvin*, 2017 WL 4334127, at *15 (E.D.N.Y. Sept. 28, 2017) (internal citation omitted) (finding the ALJ's failure to acknowledge or discuss the claimant's neck pain at step two or anywhere in the decision was not harmless error and remand was warranted); *compare to Adams v. Bowen*, 833 F.2d 509, 512 (5th Cir. 1987) (finding "no ground" for remand where "the ALJ acknowledged" the claimant's alleged "significant impairment" at step two but found it to be non-severe, and "went on to find, pursuant to the fourth step of the sequential evaluation analysis, that [the] impairment did not disable [her] from performing her past sedentary work"); *Boothe v. Colvin*, 2013 WL 3809689, at * 5-6 (N.D. Tex. July 23, 2013) (Fitzwater, C.J.) (finding that any step two error was "harmless because the ALJ considered [the alleged] conditions in his RFC analysis").

And because remand is appropriate on the grounds presented in Plaintiff's first argument, the Court pretermits discussion of Plaintiff's remaining arguments. Plaintiff can raise these arguments before the ALJ on remand. *See* 20 C.F.R. § 404.983 (providing that when a case is remanded from federal court, the ALJ may consider any issues relating to the claim).

## Recommendation

For these reasons, the Magistrate Judge recommends that the District Court REVERSE the Commissioner's decision and REMAND the case to the Commissioner for further proceedings.

**SO RECOMMENDED.**

October 13, 2023.

REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Svcs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).